## SCHUTZ v SOVEREIGN HOTEL CO

Ohio Appeals, 8th Dist, Cuyahoga Co

No 15661. Decided Dec 23, 1936

Payer, Corrigan, Cook & Pilliod, Cleveland for plaintiff.

Mooney, Hahn, Loeser, Keough & Fulton, Cleveland, for defendant.

## OPINION

By LIEGHLEY, PJ.

In June, 1934, Arno Schutz was employed as a waiter in the Sovereign Hotel and fell down an elevator shaft receiving injuries from which he shortly thereafter died. He had been employed in this hotel for a period of about five years and presumably acquired such knowledge of his surroundings as one normally would, who was engaged in the work which he had to do such as delivering food and drink throughout the hotel by means of elevator and otherwise.

Suit was brought by plaintiff as administrator of the estate of Arno Schutz to recover damages for wrongful death, which resulted in a judgment in favor of plaintiff. Appeal was perfected to this court on questions of law to obtain a reversal of said judgment.

Arno Schutz, in the course of his employment, was called upon about ten o'clock P. M., on the day of his injury, to deliver a can of punch to the solarium located on the tenth floor of this hotel. In making this delivery he saw fit to utilize an elevator not in use in the conduct of the business of the hotel that evening. He operated the elevator himself up to the tenth floor and upon his arrival there turned out the light in the elevator, lifted the can of punch therefrom and partly closed the door. He inserted a piece of metal between the leaves of the door to serve as a wedge to hold the door partially open knowing the door would lock if permitted to close entirely. Thereupon he delivered the can to one Bradshaw, another waiter, who was only a short distance from the elevator and had charge of serving the party in this room known as the solarium. He immediately started to return to the elevator with the admitted intention of opening the door and descending. Upon his return he discovered that the key or metal wedge had dropped to the floor from the place that he had inserted it and that the door was closed and locked. He thereafter unlocked and opened the metal covered sliding door to the elevator. One or more witnesses say that he then stooped to pick up something, presumably the key or metal wedge theretofore used by him. He then either lost his balance and fell into the elevator shaft or as others say, stepped into the shaft without looking and was precipitated to nearly the fifth floor where his body was found on top of the elevator and thereafter removed.

There is evidence to sustain the statement and one of the exhibits discloses that the elevator, when the light is turned off, and the shaft, when the elevator is not there, is relatively dark. The facts and circumstances are such that any claim that the opening of the door caused him to be hurled down the shaft is untenable. The conclusion is inescapable that he stepped into this darkened elevator well either after he attempted to pick up something or without attempting to pick up the metal wedge he took a step into this darkened shaft without looking.

The third paragraph of the syllabus of the case of **Flury v Central Publishing House of Reformed Church in the United States, 118 Oh St 154** reads as follows:

"3. The testimony of a plaintiff invitee in an action for negligence, that from a lighted room he opened a closed metal covered sliding door, was confronted with total darkness beyond the door, that he then stepped into such total darkness, to his injury, without any knowledge, information or investigation as to what such darkness might conceal, raised an inference of negligence on his part which, in the absence of any evidence tending to refute such inference, will require a directed verdict for the defendant."

The defendant contends that this case is controlled by the Flury case. The plaintiff contends that the facts in this case may be readily distinguished from the facts of that case.

It was and is claimed by the plaintiff that the decedent met his death through the negligence of the defendant in that said elevator was mechanically defective. It was urged and evidence was offered in support thereof that the controller lever was worn and defective so that when left at a certain floor, as in this case the tenth floor, the elevator would slide downward as it did in this case. There seems to be no dispute that the elevator involved in this case slowly slid downward after decedent left it and was within a foot or two of the level of the fifth floor when his body was discovered on top of the elevator.

The issue concerning the condition of the elevator was in rather sharp controversy in the trial of this case and this issue was resolved by the jury in favor of the plaintiff. For the purposes of this decision it may be assumed that this eleva-

tor was mechanically defective and that the defendant was negligent.

Plaintiff contends that this case is distinguished from the Flury case by the fact that when decedent returned to the elevator a few moments after he had left it, he had a right to assume that the elevator would be in the position he left it. Therefore. acting upon that assumption, said decedent stepped into said shaft where the elevator was not present at the time he did so, and that said decedent cannot be charged with any contributory negligence in doing what he did do. If this be true, then the judgment herein should be affirmed.

In the opinion in the Flury case, at page 166, the court said:

"True, the accident would not have happened had the defendant been free from negligence; but it is equally true, that, had the plaintiff exercised that care that an ordinarily prudent man would have exercised under the there existing circumstances, the accident would not have happened."

It is conceded that if the circumstances and conditions of the elevator door and its surroundings had remained the same when decedent returned to the elevator after making his delivery, the claim of plaintiff would be well founded. However, when decedent returned to the elevator he saw that he had insecurely wedged the door so as to hold it partially open. He saw that the iron wedge used by him had fallen to the floor. He saw that the door was closed and locked. He was by these circumstances put on notice that conditions had changed and it became his duty to exercise ordinary care for his own safety.

What did he do? This key or wedge must have fallen on the outside of the door in the room where he was located when he reached the elevator door. It could not have fallen on the inside and remained within his reach as the elevator had moved downward. He unlocked the sliding door and shoved it open. Some say he then stopped to pick up something and then stepped into this darkened shaft or as some say, he took a step into the darkened shaft and fell. Unless he lost his balance when stooping and carelessly fell into the shaft without looking, he negligently stepped into the darkened shaft without looking where he stepped.

This is not a case like the facts of the case of **Theatre Co v Lautermilch, 118 Oh**

St 167, wherein the opening of the door is so closely associated with the step and fall as to render the situation a jury issue. In this case, when decedent opened the elevator door he was and remained in a place of safety. The opening of the door did not contribute to his fall nor was a step forward required to open it. His failure to look where he was going thereafter caused his precipitation. He heedlessly and recklessly stepped into place of darkness and danger about which by circumstances and conditions he had been cautioned or forewarned to use ordinary care to ascertain.

It is our conclusion that this case is controlled by the rule or doctrine of the Flury case and that plaintiff is not entitled to recover.

The judgment is reversed and final judgment entered for appellant.

TERRELL, J, concurs in judgment.
LEVINE, J., dissents.